# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| | ) | |
| Respondent, | ) | No. 67616-4-I |
| | ) | |
| v. | ) | |
| | ) | |
| PERNELL LAMONT FINLEY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: April 1, 2013 |
| | ) | |

DWYER, J. — Pernell Finley appeals from his convictions of two counts of rape in the first degree, one count of felony harassment, and one count of felony violation of a court order arising from an incident in which he forced his girlfriend to engage in anal sex at knifepoint. He asserts that the trial court erred, first, by denying his request to proceed pro se and, second, by admitting into evidence a no-contact order which, he contends, was inapplicable to the conduct for which he was charged. Finley further asserts that his convictions of felony harassment and rape in the first degree violate the double jeopardy provisions of the Washington and United States constitutions. We find these contentions to be without merit and, accordingly, affirm Finley's convictions.

In addition, Finley contends that his offender score was miscalculated for purposes of sentencing. Finley is correct that several of his prior convictions in Florida are not comparable to Washington felonies. Because these convictions were improperly included by the trial court when calculating Finley's offender score, we remand for resentencing.

I

On March 5, 2010, Monique Lock awoke at approximately 5:30 a.m. and discovered her former fiancée, Pernell Finley, sitting at her computer. Lock, who had demanded an end to the relationship, asked Finley when he was going to leave her home. Finley did not reply. Instead, after Lock returned to bed, Finley went to the kitchen and obtained a knife. He then followed Lock into the bedroom.

Finley told Lock that she had ruined his life and that he was going to kill her. He told her to be quiet and to lie face-down on the bed. He asked Lock, "who's in control now?" Still threatening Lock with the knife, Finley forced her to engage in anal sex. Finley thereafter permitted Lock to go to the bathroom to clean herself. When Lock returned to the bedroom, however, Finley again forced her to have anal sex at knifepoint.

Following the completion of these acts, Finley continued to tell Lock that he was going to kill her because she had ruined his life. Finley told Lock that he was also going to kill himself and that they "were both going to be in the papers." When Finley arose from the bed to open the window, Lock fled from the apartment. Finley chased after Lock and pushed her, causing her to fall down a

flight of stairs. Lock then began to scream for help, pounding on the doors of neighboring apartments.

Shawn Emerson, who lived in a nearby apartment, heard Lock screaming outside. Emerson ran out of his apartment and toward the origin of the screams. He encountered Lock near her apartment, naked and bleeding from her leg. She was shouting repeatedly that she had been raped.

Emerson quickly returned to his apartment to retrieve a blanket. Emerson told his wife, Susan, to call 911. He then returned to Lock, wrapped her in the blanket, and escorted her to his apartment.

When Emerson and Lock reached Emerson's apartment, Susan was speaking to a 911 dispatcher on the telephone. The dispatcher asked to speak to Lock. Lock told the dispatcher that Finley had tried to kill her, that he was armed with a knife, and that he made her "have all kind of sex with him." During this conversation, Lock looked out the window and observed Finley attempting to flee the scene on a bicycle. She described his appearance and location to the dispatcher. Based upon this information, the police were able to quickly apprehend Finley.

Finley was thereafter charged with two counts of rape in the first degree–domestic violence and one count of felony harassment domestic violence. In addition, prosecutors discovered the existence of a no-contact order issued on May 29, 2009, prohibiting Finley from coming within 500 feet of Lock's residence,

school, workplace, or person until May 29, 2011.[1] Accordingly, Finley was also charged with domestic violence felony violation of a court order.

While in jail awaiting trial, Finley placed a series of telephone calls to Lock. In these calls, he urged Lock to either avoid appearing at his trial or, in the alternative, to modify her story and describe her encounter with Finley as consensual intercourse. Finley further instructed Lock to deny having any contact with him since his arrest. Based upon the content of these telephone conversations, Finley was also charged by amended information with one count of witness tampering domestic violence.

A jury trial was held in January 2011. As she had been instructed by Finley, Lock testified that the sexual intercourse was consensual. Finley, who testified in his own defense, told the jury that it was Lock who had initiated the anal intercourse. The jury found Finley guilty as charged on all counts. Finley was thereafter sentenced to a total of 471 months of incarceration.

Finley appeals.

II

Finley first contends that the trial court erred by denying his request—made just prior to the close of the prosecution's case in chief—to discharge his attorneys and proceed pro se. We disagree.

Criminal defendants have a constitutional right to waive the assistance of counsel and represent themselves at trial. Faretta v. California, 422 U.S. 806,

---

[1] The no-contact order was issued based upon an April 2009 incident in which Finley also threatened to kill Lock with a knife.

819-20, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); State v. Barker, 75 Wn. App. 236, 238, 881 P.2d 1051 (1994). An unjustified denial of this right requires a new trial. State v. Madsen, 168 Wn.2d 496, 503, 229 P.3d 714 (2010); State v. Breedlove, 79 Wn. App. 101, 111, 900 P.2d 586 (1995). The right to self-representation, however, is not absolute. State v. DeWeese, 117 Wn.2d 369, 375, 816 P.2d 1 (1991). As a threshold matter, the defendant's request to proceed pro se must be both timely and unequivocal.[2] State v. Stenson, 132 Wn.2d 668, 737, 940 P.2d 1239 (1997). Where a defendant's request for self-representation is untimely, "the right is relinquished and the matter of the defendant's representation is left to the discretion of the trial judge." DeWeese, 117 Wn.2d at 377.

The trial court's discretion to grant or deny a motion to proceed pro se lies along a continuum that corresponds with the timeliness of the request. State v. Honton, 85 Wn. App. 415, 420, 932 P.2d 1276 (1997); State v. Fritz, 21 Wn. App. 354, 361, 585 P.2d 173 (1978). If the request is made well before trial, the right to self-representation exists as a matter of law. Fritz, 21 Wn. App. at 361. If the request is made as the trial is about to commence, or shortly before, the existence of the right depends upon the facts of the case with a measure of discretion reposing in the trial court. Fritz, 21 Wn. App. at 361. Finally, if the

---

[2] In addition, because a request to proceed pro se involves the waiver of the constitutional right to the assistance of counsel, such a request must also be voluntary, knowing, and intelligent. Madsen, 168 Wn.2d at 504. Thus, where a defendant makes a timely and unequivocal request for self-representation, the court should ascertain that the defendant understands "the seriousness of the charge, the possible maximum penalty involved, and the existence of technical procedural rules governing the presentation of his defense." DeWeese, 117 Wn.2d at 378. Here, because the trial court determined that Finley's request was neither timely nor unequivocal, it did not reach these issues.

request is made during trial, "the right to proceed pro se rests largely in the informed discretion of the trial court." Fritz, 21 Wn. App. at 361. In assessing a request made after the commencement of trial, the trial court should consider "'[1] the quality of counsel's representation of the defendant, [2] the defendant's prior proclivity to substitute counsel, [3] the reasons for the request, [4] the length and stage of the proceedings, and [5] the disruption or delay which might reasonably be expected to follow the granting of such a motion.'" Fritz, 21 Wn. App. at 363 (quoting People v. Windham, 19 Cal.3d 121, 128-29, 560 P.2d 1187 (1977)).

Here, the trial court properly denied Finley's untimely motion. The request was made just prior to the close of the State's case; accordingly, Finley's right to proceed pro se rested "largely in the informed discretion of the trial court." Fritz, 21 Wn. App. at 361. With respect to the first factor identified in Fritz, the trial court noted that Finley's assigned attorneys had been conducting a skillful defense of their client. The court explained that "the representation in this case has been not only adequate but actually very competent." With respect to the second factor, the absence of any earlier request by Finley to substitute counsel also favored denial. Similarly, Finley's asserted reason for the request—an unsupported accusation that his attorneys were acting as "agents for the State"— also militated against the granting of Finley's motion. Moreover, the length and stage of the proceedings—the fourth factor identified in Fritz—also weighed in favor of denial. The request was made just prior to the close of the prosecution's case and, as the trial court explained, "We've had a jury sitting now for days

hearing the evidence in this case." Finally, given Finley's erratic and combative behavior throughout the proceedings—including frequent outbursts and verbal sparring with the trial judge—the court reasonably concluded that granting Finley's motion would cause unwarranted disruption and delay of the trial.

Under these circumstances, the trial court properly exercised its discretion by denying Finley's untimely request to proceed pro se.[3] There was no error.

## III

Finley next asserts that the trial court erred by admitting into evidence a no-contact order that, Finley contends, was inapplicable to the conduct for which he was charged. He asserts that the expiration date of this order—issued after Finley assaulted Lock in 2009—must be construed as predating the conduct at issue in this case. We disagree.

As an initial matter, Finley did not object to the admission of the no-contact order at trial. The issue was not raised in a motion to exclude; nor did Finley object when the order was introduced into evidence. We will not ordinarily review a claim of error not raised in the trial court. RAP 2.5(a). Nor has Finley pointed to any exception within the rules of appellate procedure entitling him to such review. Accordingly, as Finley acknowledges, this claim of error must be analyzed pursuant to the ineffective assistance of counsel standard. Defense

_____

[3] Finley asserts that the trial court's decision to deny his motion was based solely upon its determination that his request was equivocal, a determination that, he asserts, was clearly erroneous. However, contrary to Finley's interpretation of the trial court's ruling, the court made clear that the denial of Finley's request was based upon the untimeliness of that request. This determination was sufficient to support the trial court's decision to deny the motion and, accordingly, we need not and do not address Finley's contention that his request to proceed pro se was unequivocal.

counsel is ineffective where (1) the attorney's performance was deficient and (2) the deficiency prejudiced the defendant. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Dispositive here, in order to satisfy the prejudice prong of the Strickland test, the defendant must establish that "there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). Here, because Finley does not demonstrate that the trial court would have erred by admitting the no-contact order over a timely objection by his attorney, this claim fails.

A charge of violation of a no-contact order must be based on an "applicable" order. State v. Miller, 156 Wn.2d 23, 31-32, 123 P.3d 827 (2005). "An order is not applicable to the charged crime if it is not issued by a competent court, is not statutorily sufficient, is vague or inadequate on its face, or otherwise will not support a conviction of violating the order." Miller, 156 Wn.2d at 31. No-contact orders that are not applicable to the crime are not admissible. Miller, 156 Wn.2d at 31.

Here, the no-contact order—imposed as a condition of Finley's sentence following his conviction of fourth degree assault—was issued on May 29, 2009. The order contained two provisions. The first provision prohibited Finley from having any contact, other than by telephone, with Lock. The expiration date for this prohibition was listed as May 29, 2009, the same date that the order was

issued.[4] The second provision of the order prohibited Finley from coming within 500 feet of Lock's "residence, school, workplace, and person." In contrast to the first provision, the expiration date of the second provision was listed as May 29, 2011.

As Finley correctly points out, where a no-contact order's expiration date is ambiguous, we have relied on principles of statutory construction to resolve the ambiguity. City of Seattle v. Edwards, 87 Wn. App. 305, 309, 941 P.2d 697 (1997), overruled on other grounds by State v. Miller, 156 Wn.2d 23, 123 P.3d 827 (2005). In Edwards, the order in question—typed upon a standard pre-printed form—stated:

> THIS ORDER FOR PROTECTION WILL BE EFFECTIVE UNTIL
> ONE YEAR FROM TODAY.
> > OR
>
> [ ] until _____ (date) or [ ] until further order of the court.

87 Wn. App. 308. The second option—"until further order of the court"—was selected, indicating, the City asserted, that the no-contact order would remain in effect, not for one year from the date of issuance, but until such time as another order was entered by the trial court. Edwards, 87 Wn. App. at 309.

This court disagreed. Rather, we explained, it was ambiguous "whether 'until further order of the court' was meant to provide a means for modifying the explicit one-year duration of the order or was meant to extend the duration beyond one year and until another order was entered." Edwards, 87 Wn. App. at

---

[4] The State contends that this expiration date, which it characterizes as "nonsensical," was due to a scrivener's error.

- 9 -

309. Applying both the rule of lenity and the general rule that the interpretation of an ambiguous order should "render no word superfluous," we determined that the phrase "until further order of the court" could not be reasonably interpreted to extend the effect of the order beyond the one-year period specified in the first line of the order. Edwards, 87 Wn. App. at 309. Instead, this phrase did no more than give notice that the duration of the order was subject to alteration by a court. Edwards, 87 Wn. App. at 309.

Here, Finley asserts that, as in Edwards, the differing expiration dates listed in the two provisions of the no-contact order render the expiration date of the order ambiguous. He contends that the rule of lenity requires that the order be construed as having expired in its entirety on May 29, 2009, thus rendering it inapplicable to his conduct on March 5, 2010. However, unlike the order considered in Edwards, the no-contact order at issue in this case contains no ambiguity. Although the expiration dates of the two provisions of the order differ, these provisions—each addressed at separate and distinct conduct by Finley— are independent of one another and, accordingly, no rule of statutory construction is required to harmonize them. Instead, the second provision of the order explicitly prohibits Finley from coming within 500 feet of Lock's residence and person until May 29, 2011. Because this second provision of the order— which remained in force on March 5, 2010—was clearly applicable to the conduct for which Finley was charged, the trial court did not err by admitting the order into evidence. Any objection by Finley's attorney would have been properly overruled.

Because there is no merit to Finley's contention that the trial court should have excluded the no-contact order from evidence due to its inapplicability, Finley can demonstrate no prejudice resulting from his attorney's failure to object to the admission of the order and, thus, Finley's claim of ineffective assistance of counsel fails.

IV

Finley next contends that his convictions of felony harassment and rape in the first degree violate the state and federal double jeopardy clauses because, he asserts, the evidence of the threat to kill necessary to prove the forcible compulsion element of rape in the first degree was also sufficient to prove the count of felony harassment. We disagree.

The double jeopardy clauses of the United States and Washington constitutions protect a defendant against multiple punishments for the same offense.[5] WASH. CONST. art. I, § 9; U.S. CONST. amend. V; State v. Calle, 125 Wn.2d 769, 772, 888 P.2d 155 (1995). Although the State may bring multiple charges arising from the same criminal conduct, "'[w]here a defendant's act supports charges under two criminal statutes, a court weighing a double jeopardy challenge must determine whether, in light of legislative intent, the charged crimes constitute the same offense.'" State v. Freeman, 153 Wn.2d 765, 771, 108 P.3d 753 (2005) (quoting In re Pers. Restraint of Orange, 152 Wn.2d 795,

---

[5] The Washington double jeopardy provision, WASH. CONST. art. I, § 9, is interpreted to be coextensive with the Fifth Amendment as interpreted by the United States Supreme Court. State v. Gocken, 127 Wn.2d 95, 107, 896 P.2d 1267 (1995). We review claims of double jeopardy de novo. State v. Freeman, 153 Wn.2d 765, 770, 108 P.3d 753 (2005).

815, 100 P.3d 291 (2004)). "If the legislature authorized cumulative punishments for both crimes, then double jeopardy is not offended." Freeman, 153 Wn.2d at 771.

We employ a three-part test when determining whether the legislature intended multiple punishments arising from the same criminal conduct. State v. Kier, 164 Wn.2d 798, 804, 194 P.3d 212 (2008) (citing Calle, 125 Wn.2d at 776). First, we examine the "express or implicit legislative intent based on the criminal statutes involved." Kier, 164 Wn.2d at 804. Second, if the legislative intent is unclear, we may then turn to the "same evidence" test, which asks if the crimes are the same in law and in fact. Calle, 125 Wn.2d at 777-78 (citing Blockburger v. United States, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932)). Third, in instances where the degree of one offense is elevated by conduct constituting a separate offense, "the merger doctrine may help determine legislative intent."[6]

---

[6] The merger doctrine, relied upon by Finley in his briefing, is not applicable to the crimes of felony harassment and rape in the first degree. Under the merger doctrine, "when the degree of one offense is raised by conduct separately criminalized by the legislature," a presumption arises that "the legislature intended to punish both offenses through a greater sentence for the greater crime." Freeman, 153 Wn.2d at 772-73 (citing State v. Vladovic, 99 Wn.2d 413, 419, 662 P.2d 853 (1983)). Application of this doctrine is appropriate, however, "only when a crime is elevated to a higher degree by proof of another crime proscribed elsewhere in the criminal code." State v. Parmelee, 108 Wn. App. 702, 710, 32 P.3d 1029 (2001).

This court has long held that the crimes of felony harassment and rape in the first degree are not subject to the merger doctrine. State v. Eaton, 82 Wn. App. 723, 731, 919 P.2d 116 (1996), overruled on other grounds by State v. Frohs, 83 Wn. App. 803, 924 P.2d 384 (1996). Addressing the same argument that Finley makes herein, the court in Eaton explained:

> [T]he type of conduct that establishes felony harassment does not elevate rape from second to first degree. On the contrary, forcible compulsion is an element of both first degree rape and one of the alternative means of proving second degree rape. See RCW 9A.44.040 (defining first degree rape) and RCW 9A.44.050 (defining second degree rape). As an element that can be shared by first and second degree rape, it is, by definition, not an additional element required to elevate the crime to a higher degree. In Vladovic the Supreme Court clearly held that the merger doctrine does not apply in this type of situation. 99 Wn.2d at 421. It applies only where the State must prove both an underlying

Kier, 164 Wn.2d at 804 (citing State v. Vladovic, 99 Wn.2d 413, 419, 662 P.2d 853 (1983)). Finally, even where two convictions would appear to merge on an abstract level under this analysis, "they may be punished separately if the defendant's particular conduct demonstrates an independent purpose or effect of each." Kier, 164 Wn.2d at 804; see also State v. Johnson, 92 Wn.2d 671, 680, 600 P.2d 1249 (1979).

The language of the statutes defining felony harassment and first degree rape does not specifically authorize multiple punishments for conduct that supports charges under both statutes.[7] See State v. Nysta, 168 Wn. App. 30, 48, 275 P.3d 1162 (2012) (comparing felony harassment and rape statutes). In such circumstances, "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger, 284 U.S. at 304. As our Supreme Court has explained, "'[i]f there is an element in each offense which is not included in the other, and proof of one offense would not necessarily also prove the other, the offenses are not constitutionally the same and the double jeopardy clause does not prevent convictions for both offenses.'" Calle, 125 Wn.2d at 777 (quoting Vladovic, 99 Wn.2d at 423). The elements of the relevant provisions are to be

crime and an accompanying crime to prove a particular degree of crime. Felony harassment does not meet that requirement, and the merger doctrine does not apply.

82 Wn. App. at 730-32. Accordingly, as this court again recently recognized in State v. Nysta, because "it is not necessary to prove felony harassment to prove a particular degree of rape," the merger doctrine (and its accompanying presumption) is not applicable to these crimes. 168 Wn. App. 30, 48 n.6, 275 P.3d 1162 (2012).

[7] This is in contrast to statutes such as RCW 9A.52.050, which expressly authorizes cumulative punishment for crimes committed during the commission of a burglary.

considered as they were "charged and proved" and not in the abstract. <u>Freeman</u>, 153 Wn.2d at 777.

Here, the offense of felony harassment required proof that Finley knowingly threatened to kill Lock and that Finley's words or conduct placed Lock "in reasonable fear that the threat [would] be carried out." RCW 9A.46.020(1)(a)(i), (b), (2)(b)(ii). In order to convict Finley of this crime, the jury was required to determine not only that Lock was subjectively in fear, but also that her fear was reasonable. <u>State v. Alvarez</u>, 74 Wn. App. 250, 260-61, 872 P.2d 1123 (1994), <u>aff'd</u>, 128 Wn.2d 1, 904 P.2d 754 (1995).

By contrast, the offense of rape in the first degree required proof that Finley engaged in sexual intercourse with Lock by forcible compulsion and that Finley used or threatened to use a deadly weapon. RCW 9A.44.040(1)(a). "Forcible compulsion" may be proved by evidence of "a threat, express or implied, that places a person in fear of death or physical injury to herself or himself or another person." RCW 9A.44.010(6). Unlike the felony harassment statute, however, the rape statute does not require that the victim's fear of death or injury be reasonable; so long as a threat is communicated by the perpetrator, evidence of the victim's subjective fear is sufficient for conviction. <u>See</u> <u>State v. Weisberg</u>, 65 Wn. App. 721, 725-26, 829 P.2d 252 (1992) (noting that in addition to evidence of victim's subjective fear, evidence of a "threat" must also be adduced in order to prove forcible compulsion).

Finley contends that the same evidence of a threat to kill used to prove forcible compulsion was also used to prove the crime of felony harassment and

that, accordingly, the "same offense" served as the basis for these two convictions.[8] However, as a comparison of the elements of the two crimes makes clear, felony harassment and rape in the first degree are not the same in law or in fact. Although it is true that—as these crimes were "charged and proved," Freeman, 153 Wn.2d at 777—evidence of a threat to kill by Finley was necessary to prove both felony harassment and rape in the first degree, each provision also required "proof of a fact which the other d[id] not." Blockburger, 284 U.S. at 304. Proof of felony harassment, unlike rape in the first degree, did not, of course, require proof of sexual intercourse. Proof of first degree rape, unlike felony harassment, did not require proof that Lock was placed in "reasonable fear" that Finley's threat to kill would be carried out. Instead, in order to prove the rapes, the prosecution was required to demonstrate only that Lock was placed in subjective fear of death or physical injury. Weisberg, 65 Wn. App. at 725-26.

Accordingly, at trial, in order to prove the crime of felony harassment, the prosecution pointed to several pieces of evidence relating to the reasonableness

---

[8] The State asserts that Finley's convictions of felony harassment and rape in the first degree were, in fact, based upon separate and distinct threats to kill. The State contends that, because there was evidence that Finley continued to make death threats to Lock after the rapes were completed, these independent acts were sufficient to support Finley's conviction of felony harassment and that, accordingly, Finley's double jeopardy argument should be rejected.

Because felony harassment and rape in the first degree are not the same in law or in fact, we need not address this argument. We note, however, that where a potential double jeopardy violation has occurred, the mere existence of independent evidence to support both convictions does not obviate the violation. Instead, a reviewing court must examine the entire record when considering a double jeopardy claim. "Considering the evidence, arguments, and instructions, if it is not clear that it was 'manifestly apparent to the jury that the State [was] not seeking to impose multiple punishments for the same offense' and that each count was based on a separate act, there is a double jeopardy violation." State v. Mutch, 171 Wn.2d 646, 664-65, 254 P.3d 803 (2011) (alteration in original) (quoting State v. Berg, 147 Wn. App. 923, 931, 198 P.3d 529 (2008)). The State makes no effort to apply this standard.

of Lock's fear. In closing argument, the prosecutor argued to the jury that Finley's use of a knife, his prior conviction of assault against Lock in 2009, and his erratic behavior preceding the threat to kill, all indicated the reasonableness of Lock's belief that Finley's threat would be carried out. As the prosecutor explained, given these circumstances, "[a]nyone would have been scared of that." On the other hand, such evidence was unnecessary to secure a conviction of rape in the first degree. Thus, in discussing the elements of rape, the prosecutor noted only that Lock had testified that she believed she would be killed. Nothing further was required to demonstrate forcible compulsion.

Because the crimes of felony harassment and rape in the first degree, as charged and proved, each require proof of a fact that the other does not, these crimes are not the same in law or in fact. Accordingly, "'the offenses are not constitutionally the same and the double jeopardy clause does not prevent convictions for both offenses.'" Calle, 125 Wn.2d at 777 (quoting Vladovic, 99 Wn.2d at 423). The trial court did not err by declining to merge these crimes.

V

Finley next contends that the trial court incorrectly calculated his offender score for purposes of sentencing because, he asserts, the court wrongly determined that several of his prior out-of-state convictions were comparable to Washington crimes. With respect to Finley's out-of-state convictions of burglary and escape, we agree.

Under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, a defendant's offender score establishes the range within which he or she must be

sentenced. RCW 9.94A.530. Where the defendant's criminal history includes an out-of-state conviction that is "comparable" to a Washington felony, the out-of-state conviction counts toward the defendant's offender score as if it were the equivalent Washington offense. State v. Morley, 134 Wn.2d 588, 606, 952 P.2d 167 (1998). The State bears the burden of proving both the existence and the comparability of the out-of-state conviction.[9] State v. Ford, 137 Wn.2d 472, 480, 973 P.2d 452 (1999).

A two-part test is utilized to determine whether an out-of-state conviction is comparable to a Washington felony conviction. State v. Larkins, 147 Wn. App 858, 862-63, 199 P.3d 441 (2008). "A court must first query whether the foreign offense is legally comparable—that is, whether the elements of the foreign offense are substantially similar to the elements of the Washington offense." State v. Thiefault, 160 Wn.2d 409, 415, 158 P.3d 580 (2007). If the answer is yes, the analysis is complete, and the court may properly count the defendant's out-of-state conviction as an equivalent Washington conviction. Morley, 134 Wn.2d at 606. If, however, the elements of the foreign offense are different or broader, the sentencing court must then determine whether the conviction is factually comparable—that is, whether the undisputed facts regarding the conduct underlying the out-of-state conviction would satisfy the elements of the comparable Washington crime. Thiefault, 160 Wn.2d at 415.

---

[9] We review de novo a challenge to the classification of an out-of-state conviction. State v. Labarbera, 128 Wn. App. 343, 348, 115 P.3d 1038 (2005). A trial court's calculation of an offender score is also reviewed de novo. State v. Bergstrom, 162 Wn.2d 87, 92, 169 P.3d 816 (2007).

Here, the State introduced evidence of seven prior convictions in Florida. These included two convictions of first degree robbery, one conviction of second degree robbery, one conviction of burglary, one conviction of possession of cocaine, and two convictions of escape. The sentencing court determined that these out-of-state convictions were comparable to Washington felony convictions and, accordingly, included the Florida convictions when calculating Finley's offender score.

Finley contends, first, that because Florida's robbery statute does not include the term "immediate force," the crime of robbery in Florida is not comparable to the crime of robbery in Washington.[10] This is so, Finley asserts, because absent a requirement of "immediate force," the Florida statute permits a conviction even where the use of force has occurred after the taking of the property has been completed, a state of affairs, Finley contends, that the Washington robbery statute does not contemplate. Instead, Finley asserts that the Washington robbery statute allows a conviction only when "the force or fear . . . takes place before or during the taking, rather than after the taking has been completed."

Finley's contention, however, is contrary to the plain language of our state's robbery statute. The statute states:

---

[10] The Florida statute defines robbery as "the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear." Former Fla. Stat. § 812.13 (1987). An act shall be deemed "in the course of the taking" if it occurs "either prior to, contemporaneous with, or subsequent to the taking of the property and if it and the act of taking constitute a continuous series of acts or events." Former Fla. Stat. § 812.13(3)(b) (1987).

> A person commits robbery when he unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person . . . . Such force or fear must be used to obtain *or retain* possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial.

Former RCW 9A.56.190 (1975) (emphasis added). Applying the plain language of the statute, we have long held that where a defendant has used force after the taking in order to retain stolen property, those "actions fall squarely within the provisions of the statute." State v. Manchester, 57 Wn. App. 765, 769, 790 P.2d 217 (1990). Accordingly, both the Florida and Washington robbery statutes permit convictions where the use of force occurs after the taking is complete. Finley's contention to the contrary provides no basis for reversing the sentencing court's inclusion of Finley's robbery convictions when determining his offender score.

Nevertheless, in his reply brief, Finley shifts his argument to suggest that these crimes are not legally comparable because the Florida statute does not require that the force used in the course of the robbery be employed *in order* to obtain or retain possession of the property. This, he asserts, is in contrast to the Washington statute, which requires a "nexus" between the use of force and the taking or retaining of the stolen property. This argument, however, is raised for the first time by Finley in his reply brief, and the State has had no opportunity to address Finley's contention. We do not consider an issue raised for the first time in a reply brief. State v. White, 123 Wn. App. 106, 114 n.1, 97 P.3d 34 (2004). Moreover, as even a cursory review of Florida case law reveals, that state's

robbery statute, like that of Washington's, requires that the taking or retaining of the property be accomplished *by* the use of force or putting in fear. See Owens v. State, 787 So.2d 143, 143-44 (Fla. App. 2001) ("To sustain a conviction for robbery, the State must prove that the theft was *accomplished by* force, violence, assault, or putting in fear." (emphasis added) (internal quotation marks omitted)).[11]

Accordingly, there is no merit to Finley's untimely attempt to differentiate the two statutes. The sentencing court did not err by including Finley's prior robbery convictions when calculating his offender score.

Finley next contends that his conviction of burglary in Florida is not comparable to the crime of burglary in Washington. This is so, Finley asserts, because the legal elements of the two crimes are not the same, and it cannot be determined, given the undisputed facts in the record, whether the conduct that supported his conviction in Florida would satisfy the elements of the crime of burglary in Washington. We agree.

In 1991, the year of Finley's conviction, the Florida burglary statute stipulated that "'burglary' means entering or remaining in a structure or a conveyance *with the intent to commit an offense therein*." Former Fla. Stat. § 810.02 (1983) (emphasis added). By contrast, the Washington burglary statute in effect at that time stated, in pertinent part, that "[a] person is guilty of burglary

---

[11] The charging documents for the robbery convictions are consistent with this requirement of Florida law. The complaint in Finley's 1991 conviction for first degree robbery alleged that Finley had taken money or other property "*by* force, violence, assault or putting Judy Lee in fear." Finley's 1996 conviction was similarly based upon the taking of property or money "by force, violence, assault or putting Christopher Rivera and/or Tamika Walker in fear."

in the first degree if, *with intent to commit a crime against a person or property therein*, he enters or remains unlawfully in a dwelling." Former RCW 9A.52.020 (1975) (emphasis added). Thus, the language of the Washington statute requires the intent to commit a crime against a person or property, whereas Florida's robbery statute does not.

This distinction is not without consequences. Although a person intending to commit a drug crime would be guilty of burglary in Florida, similar proof would not support a burglary conviction in Washington. See P.D.T. v. State, 996 So.2d 919, 920 (Fla. App. 2008) (noting that evidence that juvenile entered home with intent to drink beer—"a crime for a minor"—would be sufficient to support robbery conviction). We have previously determined, in identical circumstances, that an out-of-state burglary conviction is not legally comparable to a conviction of burglary in Washington. Larkins, 147 Wn. App. at 863-64. In Larkins, we considered the comparability of the crime of burglary in Ohio to the crime of burglary in Washington. 147 Wn. App. at 864-65. Because, as in Florida, the Ohio statute permitted "a crime other than one against a person or property as an element of burglary," we determined that the elements of the two crimes were not comparable as a legal matter. Larkins, 147 Wn. App. at 864.

The situation presented here is indistinguishable from that addressed in Larkins; because the Florida burglary statute permits a burglary conviction even where the intended crime was not a "crime against a person or property," this offense is not legally comparable to the crime of burglary in Washington.

Nevertheless, the State asserts that even if the two crimes are not legally

comparable, inclusion of this burglary conviction in Finley's offender score was proper because the two crimes are factually comparable. This is so, the State contends, because Finley's concurrent 1991 conviction for robbery in Florida—committed on the same day as the burglary and against the owner of the same home that he unlawfully entered—was a "crime against persons or property" that would support a conviction of burglary under Washington law. The State notes that although there is no direct evidence that this robbery was the intended crime used to support Finley's burglary conviction, because Finley was armed with "a piece of lumber" during the commission of both crimes,

> [i]t would appear to be an eminently reasonable conclusion—and one the trial court should be allowed to make—that Finley did not carry a piece of lumber all day, choosing to victimize Lee at two distant points in time using the same weapon, but that he equipped himself with a piece of wood and then unlawfully entered Lee's home with the intent to deprive her of her purse and her money, a crime he then completed.

In Larkins, however, we explained that in determining whether an out-of-state conviction is factually comparable to a Washington crime, a sentencing judge cannot rely on inferences unless those inferences "inevitably follow from the admitted facts." Larkins, 147 Wn. App. at 866. As it does here, in Larkins, the State argued that the defendant's concurrent conviction of assault against the homeowner was the intended crime which supported the burglary conviction. However, because there was no direct evidence so indicating, we determined that in finding that the defendant had intended a crime against a person or property, the sentencing court had necessarily drawn a factual inference. Because this inference did not "follow inevitably" from the admitted evidence, it

- 22 -

constituted impermissible judicial fact-finding, and we therefore reversed the sentencing court's decision to include this prior out-of-state conviction when calculating the defendant's offender score. Larkins, 147 Wn. App. at 866.

Here, as in Larkins, in order to determine that Finley's burglary conviction in Florida was factually comparable to the crime of burglary in Washington, the sentencing court impermissibly relied upon a factual inference that does not follow inevitably from the undisputed facts of that prior conviction. Although both the robbery and the burglary involved the same victim, the same day, and even the same weapon, it does not follow that both convictions arose from a single interaction. As Finley points out, it remains possible that "Finley was homeless, carried the piece of lumber for protection, unlawfully entered Judy Lee's home to consume illegal drugs, and encountered Judy Lee only after vacating the premises."

Because, absent reliance upon an impermissible inference, it cannot be determined whether Finley's conduct underlying his Florida burglary conviction would support a conviction under Washington law, the Florida conviction is not comparable to the Washington crime, and the trial court erred by including this conviction when calculating Finley's offender score.

Finally, the State concedes that Finley's convictions of escape in Florida are not comparable to convictions of first degree escape in Washington. As the State correctly notes, the elements of the two crimes differ. In Washington, only a person "detained pursuant to a conviction of a felony or an equivalent juvenile offense" may be convicted of escape in the first degree. RCW 9A.76.110. By

contrast, in Florida, the reasons for the detention are irrelevant. Former Fla. Stat. § 944.40 (1971). Moreover, because the documents introduced at sentencing do not describe with specificity the crime for which Finley was in custody, it is impossible to determine if Finley's conduct in Florida would support a conviction under the Washington first degree escape statute. Accordingly, as the State properly concedes, the sentencing court erred by concluding that the crimes were equivalent and that Finley's Florida convictions for escape should be included in the calculation of his offender score.

Because the exclusion of the out-of-state burglary and escape convictions results in reduced offender scoring as compared to that utilized by the trial court in determining the appropriate sentences on the various counts, we remand to the trial court for resentencing. The trial court retains complete discretion to determine Finley's sentences within the appropriate standard ranges.

VI

Finley next asserts several claims of ineffective assistance of counsel based upon his attorney's failure to argue that his current offenses of rape in the first degree, felony harassment, and felony violation of a court order constituted the "same criminal conduct" for purposes of sentencing. In addition, Finley contends that his attorney should have argued at sentencing that his 1991 convictions of burglary and robbery in Florida also constituted the same criminal conduct. We disagree on all counts.

A determination of "same criminal conduct" at sentencing affects the standard range sentence by altering the offender score. RCW 9.94A.589(1). "[I]f

the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime." RCW 9.94A.589(1). With respect to prior convictions, even where the prior sentencing court did not explicitly make a finding of same criminal conduct, if the court ordered that the sentences be served concurrently, the current sentencing court must independently determine whether the prior convictions "encompass the same criminal conduct" and, if they do, must count them as one offense. RCW 9.94A.525(5)(a)(i); State v. Torngren, 147 Wn. App. 556, 563, 196 P.3d 742 (2008).

Crimes constitute the "same criminal conduct" when they "require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1). The legislature intended the phrase "same criminal conduct" to be construed narrowly, State v. Flake, 76 Wn. App. 174, 180, 883 P.2d 341 (1994); if any one of the factors is missing, the multiple offenses do not encompass the same criminal conduct. State v. Lessley, 118 Wn.2d 773, 778, 827 P.2d 996 (1992). Moreover, because a finding by the sentencing court of same criminal conduct always favors the defendant, "it is the defendant who must establish [that] the crimes constitute the same criminal conduct." State v. Graciano, ___ Wn.2d ___, 295 P.3d 219, 223 (2013).

Finley asserts that he received ineffective assistance of counsel, first, when his lawyer did not argue that his prior convictions of burglary and robbery in Florida—committed on the same day and involving the same victim—constituted the same criminal conduct. Finley's lawyer instead chose to argue that these

- 25 -

crimes were not comparable to crimes in Washington, a strategy potentially furthered by a decision not to introduce evidence of the underlying facts of those cases. Because such evidence would have been required for the sentencing court to make a same criminal conduct determination, Finley's lawyer's decision to refrain from making this argument constitutes a legitimate trial tactic and, thus, is not subject to an ineffective assistance of counsel claim. See State v. Aho, 137 Wn.2d 736, 745-46, 975 P.2d 512 (1999). Moreover, because we have determined that Finley's conviction of burglary is neither legally nor factually comparable to the crime of burglary in Washington, only the robbery conviction will be counted toward Finley's offender score at resentencing. Thus, Finley's claim, regardless of merit, is moot.

With regard to the crimes of felony harassment and rape in the first degree, Finley fails to demonstrate that any argument by defense counsel would have had a reasonable probability of affecting the outcome of his sentencing. See Strickland, 466 U.S. at 693. In declining to merge these crimes, the sentencing court explained that the acts supporting the felony harassment and the rapes had "occurred over a period of time" and that there was evidence supporting the harassment that was not "necessary to prove the rape." Thus, the sentencing court clearly believed that these crimes occurred at different times. Given the court's view of the evidence underlying the two convictions, and in light of the defendant's burden to demonstrate same criminal conduct, Graciano, 295 P.3d at 223, it is highly improbable that such an argument, had it been made, would have been successful. Accordingly, Finley's second ineffective assistance

of counsel claim also fails.

Finley's remaining claim also fails for similar reasons. Finley asserts that, because both the rapes and the felony violation of the court order involved the same intent, the same victim, and the same time and place, these crimes encompass the same criminal conduct and, thus, should have been counted as a single crime for purposes of sentencing. He asserts that his attorney should have so argued. However, as we have previously explained, "[t]he legislature [has] recognized that violation of a no-contact order is *a crime against the court and punishable as contempt of court*." State v. Moreno, 132 Wn. App. 663, 671, 132 P.3d 1137 (2006) (citing RCW 26.50.110(3)) (emphasis added). Accordingly, because these crimes do not involve the same victim, they do not encompass the same criminal conduct. Such an argument by Finley's attorney would have failed and, consequently, so must his claim for ineffective assistance of counsel.[12]

---

[12] In a lengthy statement of additional grounds, Finley asserts a multitude of additional ineffective assistance of counsel claims. These claims, which simply reflect Finley's disagreement with his lawyer's strategic decisions during trial, do not have merit. There is "'a strong presumption that counsel's performance was reasonable,'" State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting Kyllo, 166 Wn.2d at 862), and matters of legitimate trial strategy are, of course, not subject to ineffective assistance claims. Aho, 137 Wn.2d at 745. "[T]he defendant bears the burden of establishing the absence of any '*conceivable* legitimate tactic explaining counsel's performance.'" Grier, 171 Wn.2d at 42 (quoting State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

Here, in what is perhaps his most cogent claim, Finley asserts that it was deficient for his counsel to note during closing argument that the evidence supporting the felony harassment charge was essentially uncontradicted. This admission, however, was made in the context of an argument that the charges of rape in the first degree—carrying far greater potential punishments—remained unproved. Thus, in context, it is clear that counsel's argument was aimed at securing an acquittal for her client on the most severe of the charges against him.

In addition, Finley asserts that he received ineffective assistance when his lawyer told the jury that it need not memorize all of its instructions, that certain claims could be more easily decided than others, that the system was geared to assume that Finley was a "bad guy," and that Lock was angry with Finley, not because she had been raped, but because she had been pushed

We affirm Finley's convictions of rape in the first degree, felony harassment, and felony violation of a court order. We remand to the trial court for resentencing.

_____ J.

We concur:

_____ J.          _____ J.

---

down the stairs. He further asserts that defense counsel conducted an inadequate cross-examination of Lock and that she misrepresented the meaning of Finley's cryptic statement to the prosecutor that, "I am your best witness."

Because, however, each of these actions by Finley's attorney fell well within the bounds of legitimate trial strategy, Finley's claims fail.