[No. 14114-1-II.   Division Two.   May 19, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. SHELDON WEISBERG, *Appellant.*

722

*Steven W. Thayer (Marc R. Kadish*, of counsel), for appellant.

*Arthur D. Curtis, Prosecuting Attorney,* and *Jeannie M. Bryant, Deputy,* for respondent.

SEINFELD, J. — Sheldon Weisberg challenges his jury conviction of rape in the second degree, contending that the State failed to prove that he used "forcible compulsion", an essential element of the crime. Weisberg also appeals the trial court's denial of his motion for a psychiatric examination of the mentally retarded victim.[1] We agree that forcible compulsion was not proved.

---

[1]According to medical reports contained in P.C.'s guardianship file and incorporated as part of the record in this case, P.C. has a mental age of approximately 9 to 11 years.

Weisberg, a 54-year-old manufacturer's representative for a clothing company, and the 39-year-old victim, P.C., were neighbors in a Vancouver, Washington, apartment complex. Weisberg and his wife lived three doors away from P.C. and he occasionally would see her in the common areas of the complex and stop to chat.

On P.C.'s birthday, September 7, 1989, Weisberg offered P.C. a birthday gift — her choice of items from the racks and boxes of sample clothing in his apartment. She was interested and the next evening, Weisberg went to her apartment door and again invited her to come to his apartment to make her clothing selection. P.C. accepted and, after calling to her roommate where she was going, willingly accompanied Weisberg to his apartment.

Once inside the Weisberg apartment, the two went upstairs to the defendant's bedroom where he kept the sample racks. As they were climbing the stairs Weisberg kissed P.C. on the cheek. In the bedroom, Weisberg helped P.C. choose two blouses and a skirt. P.C. said that she wanted to try on the items to make sure that they fit, and, in order to do so, she removed her shorts and her shirt. Weisberg assisted her and he suggested the clothing would fit better if P.C. removed her underclothing. When P.C. did not immediately take off her bra and panties, Weisberg removed them for her. There is no evidence that Weisberg used any force or threatened or suggested harm to P.C. if she did not remove the undergarments. Nor did P.C. ever attempt to leave Weisberg's apartment although the uncontested evidence was that his apartment doors were not locked from the inside and that her apartment door was not locked from the outside. P.C. testified that she did not try to stop Weisberg because she was afraid "that he might try to hurt me or something, and I didn't want to take the chance."

P.C. first tried on the blouses and then the skirt. After she removed the skirt and before she put her own clothes back on, Weisberg told her to lie down on his bed. When she said that she did not want to lie on the bed, Weisberg responded, "go ahead and lay on the bed anyway." Again, there is absolutely

no evidence indicating either that Weisberg suggested or threatened harm to P.C. if she did not comply or that he used any physical force to obtain compliance.

Next Weisberg removed his clothes, rubbed P.C. with baby oil, and then had intercourse with her. When she told him to stop, that it was hurting her, he immediately stopped. He advised her to go take a shower to wash off the baby oil. P.C. showered, returned to the bedroom, dressed, and watched television in the bedroom while the defendant took his own shower. Weisberg returned to the bedroom, dressed and then went downstairs for a couple of soft drinks. The two had their drinks and watched part of a movie on television. After approximately an hour in the apartment, Weisberg escorted P.C. downstairs and out the front door. P.C. testified that before she left, "he [Weisberg] turned around and said, 'Don't say anything to anybody what I did.' "

Sometime later the incident was reported to the police and Weisberg was arrested and charged with one count of rape in the second degree by forcible compulsion (RCW 9A.44.050(a)).[2] At trial, the jury was instructed regarding both rape in the second degree and the lesser included offense of rape in the third degree (RCW 9A.44.060). The jury found Weisberg guilty of rape in the second degree by forcible compulsion.

■ When considering a challenge to the sufficiency of the evidence supporting a conviction, our inquiry is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime *beyond a reasonable doubt*.' " *State v. Aver*, 109 Wn.2d 303, 310-11, 745 P.2d 479 (1987) (quoting *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628

---

[2]The use of forcible compulsion is one of three alternative methods of committing rape in the second degree. Another alternative is rape in the second degree by engaging in sexual intercourse with another person when the victim is incapable of consent by reason of being mentally incapacitated. RCW 9A.44.050(1)(b). In this case, however, the State neither charged Weisberg with this alternative version of second degree rape, nor attempted to prove that P.C. was incapable of consent.

(1980)). The State's evidence is presumed to be true, and this court considers all reasonable inferences that can be drawn from that evidence. *State v. Gear*, 30 Wn. App. 307, 310, 633 P.2d 930, *review denied*, 96 Wn.2d 1021 (1981).

The elements of rape in the second degree by forcible compulsion, as charged in this case, are set out in RCW 9A-.44.050:

> (1) A person is guilty of rape in the second degree when, under circumstances not constituting rape in the first degree, the person engages in sexual intercourse with another person:
> (a) By forcible compulsion . . .[.]

" 'Forcible compulsion' means physical force which over-comes resistance, or a threat, express or implied, that places a person in fear of death or physical injury to herself or himself or another person, . . .." RCW 9A.44.010(6).

The State concedes that the evidence in this case did not establish that the defendant used physical force to overcome P.C.'s resistance. *See State v. McKnight*, 54 Wn. App. 521, 774 P.2d 532 (1989) (forcible compulsion exists only if the force exerted by the perpetrator was directed at overcoming the victim's resistance and was more than that which is normally required to achieve penetration). Nor does the State argue that Weisberg made any express threats to P.C. Instead, the State contends that Weisberg, through his con-duct and the circumstances, impliedly threatened P.C. such that she feared physical injury if she did not comply with his demands. However, the State fails to identify any evi-dence of a threat of harm, either express or implied.

During oral argument the State acknowledged that its entire case of rape in the second degree was predicated on the exchange between P.C. and Weisberg in which she expressed reservations about lying down on the bed and he told her to "go ahead and lay down on the bed anyway." Although P.C. testified that she did as the defendant asked because she was frightened, a finding of forcible compulsion cannot be based solely on the victim's subjective reaction to particular conduct. There also must be a "threat" — a com-munication of an intention to cause bodily injury. RCW

9A.04.110(25)(a). Thus, there must be some evidence from which the jury could infer that not only did P.C. perceive a threat, but also that Weisberg in some way communicated his intention to inflict physical injury in order to coerce compliance.

The words, "lay down on the bed anyway", in response to P.C.'s objection, suggest Weisberg's disregard for P.C.'s feelings and arguably could suggest that resistance would be futile because physical force would be used if necessary to obtain compliance. However, more is required. To have "forcible compulsion", the implied threat must *cause* the victim's fear ("threat . . . that places a person in fear of . . . physical injury . . .". RCW 9A.44.010(6)). A close examination of the record produces no indication of anything in Weisberg's communications with P.C., or in the situation, that would cause one to interpret "lay down on the bed anyway" as a veiled threat of physical injury. Absent conduct by Weisberg that produced P.C.'s stated fear, there is no forcible compulsion, an essential element of rape in the second degree.

The State cites *State v. Gonzales*, 18 Wn. App. 701, 702, 571 P.2d 950 (1977), *review denied*, 90 Wn.2d 1014 (1978), for the proposition that an implied threat of physical harm is sufficient to constitute forcible compulsion. Although we agree with that general proposition, it does not relieve the State from its burden of producing evidence of an implied threat. The rape at issue in *Gonzales* occurred late at night in a campground in the Cascade Mountains. Gonzales used physical force to embrace the victim. When she sought to prevent further overtures by attempting to lock him out of the car, he forcibly dragged her from the vehicle. Eventually the victim ceased to resist because the conduct of Gonzales "put her in fear of physical injury if she refused." 18 Wn. App. at 702. Consequently, the court concluded, the jury was entitled to find "that the complaining witness submitted because of an *implied* threat of physical injury to herself." 18 Wn. App. at 702.

*Gonzales* is factually distinguishable from the case at bar. Contrary to Gonzales, Weisberg did not engage in conduct suggesting that he would injure P.C. if she did not comply with his requests, and, in fact, he ceased physical contact when P.C. complained that the intercourse hurt her. The physical setting also differed. Unlike Gonzales' victim, P.C. was not in an isolated location without an avenue of escape or potential rescuers in the vicinity. Here, the evidence simply was not legally sufficient to support a finding of an implied threat. *Gonzales*, 18 Wn. App. at 703.

■ Weisberg also assigns error to the trial court's denial of his motion for a psychiatric examination of P.C. The granting or denying of a motion for a psychiatric examination of a complaining witness is within the sound discretion of the trial court. *State v. Braxton*, 20 Wn. App. 489, 580 P.2d 1116 (1978), *review denied*, 91 Wn.2d 1018 (1979). A psychiatric exam may be ordered upon a showing of a "compelling reason" for doing so. *State v. Demos*, 94 Wn.2d 733, 619 P.2d 968 (1980). Absent this showing, other, more traditional means of assessing witness credibility and perceptual ability are sufficient. *State v. Demos, supra.*

In this case, the trial court conducted an in camera review of the victim's mental history and concluded that a psychiatric evaluation would be of little value to the jury in establishing or impeaching P.C.'s credibility as a witness. This approach is consistent with *Braxton*, which points out that the jury, not a psychiatrist, is the appropriate entity to evaluate the credibility of a witness. 20 Wn. App. at 491. The defense has not shown that the trial court abused its discretion when it refused to order a psychiatric examination of the victim. There was no error.

Nonetheless, in light of our holding on the issue of forcible compulsion, we reverse the conviction for rape in the second degree. However, there is sufficient evidence of lack of consent to support a conviction of the lesser included offense of rape in the third degree. RCW 9A.44.060. Therefore, we remand for

entry of judgment and for resentencing on a conviction of rape in the third degree.

MORGAN, A.C.J., and ALEXANDER, J., concur.