108 P.3d 177 (2005)
126 Wash.App. 276
STATE of Washington, Respondent,
v.
Christopher Ronald HANSON, Appellant.
No. 22508-9-III.
Court of Appeals of Washington, Division 3, Panel Two.
March 10, 2005.
David N. Gasch, Gasch Law Office, Spokane, WA, for Appellant.
Kevin M. Korsmo, Attorney at Law, Spokane, WA, for Respondent.
*178 BROWN, J.
¶ 1 Christopher Hanson was found guilty of felony harassment. He challenges the sufficiency of the evidence. We affirm.

FACTS
¶ 2 On March 15, 2002, Jill Hanson and her husband of three years, Christopher Hanson, argued. The next morning, the fight continued and got physical. As a result of the investigation that followed Ms. Hanson's report, Mr. Hanson was initially charged with harassment and second degree assault. On the morning of trial, the charges were amended to harassment, unlawful imprisonment, and second degree assault.
¶ 3 At trial it was revealed that on April 2, 2002, Ms. Hanson went to the Spokane police station. According to Officer Susan Mann, she saw Ms. Hanson wandering the lobby. Ms. Hanson was tearful and appeared frightened. Officer Mann asked her if she was okay. Ms. Hanson told the officer that if her husband caught her there, he would kill her. Ms. Hanson's cellular phone kept ringing while the officer made a report.[1] She did not answer it the first two times, but picked up on the third call. The officer could hear a man yelling on the other end. Ms. Hanson became visibly upset  she started trembling and was on the verge of tears.
¶ 4 Ms. Hanson gave a written statement in which she related her husband "forced" her into the bedroom for approximately one and one half hour, "spit" on her, "poured a coke" on her, "punched [her] in the head," "threatened" her if she called the police, and called her names. Report of Proceedings (RP) at 43-44. At trial Ms. Hanson reluctantly admitted giving the statement and agreed all in the statement had happened. Ms. Hanson made it clear she wanted to save her marriage and she did not desire the criminal charges pursued. While grudgingly testifying her statement to the police was true, she related she felt the police report misquoted or mischaracterized her statements.
¶ 5 Officer Mann saw "bruising" on Ms. Hanson's upper left arm, across her neck and chest, and her lower left leg, and a "big lump on the back of her head." RP at 71. Later that day, a corporal photographed Ms. Hanson's injuries. Exhibits 1 through 4 admitted into evidence were the photographs of Ms. Hanson, her arm, neck, and another of her arm. Using the photographs, Ms. Hanson identified a bruise on her arm attributed to Mr. Hanson. "One of them is of a bruise I had on my arm because when [Mr. Hanson] grabbed my arm it got pinched." RP at 37. Regarding another photograph: "It was on my collarbone and I just got like, I don't know what happened, I got scratched or something, I don't know." RP at 37-38.
¶ 6 On July 1, 2002, she wrote to the prosecutor to try to set the record straight.[2] She admitted being upset when she talked to the officer but denied being fearful of her husband. She explained that the night before she went to the police, she received a call from her husband, asking her to bring him $200 on her lunch break the next day. She said that she "probably . . . told [the desk officer] whatever I could tell her to get [her husband] in jail that night" because she did not have the money to give him and she did not want to have to face him. RP at 41.
¶ 7 When asked if she was afraid, she responded:
No. I wasn't scared. Well, I was scared but I wasn't scared of Chris hurting me. I was scared of Chris leaving me, I was *179 scared of him being mad that I didn't have the money, and that he would have to go without when I don't go without and about what he gets paid.
RP at 41. The State later elicited the following testimony from her:
Q Did you ever tell the officer that you came to report this because you were afraid he would kill you?
A I was scared to report it. Whether Chris would really kill me or not, I can't say. I don't know.
Q You did tell the officer that?
A I did  I don't know. But  I don't know those things that officer said that I am pretty sure I didn't say. Because there are several things that I am pretty sure I didn't say. What I am confused why people are saying I said certain things when I know I didn't and making me question what I said.
RP at 46.
¶ 8 A jury acquitted on the unlawful imprisonment and assault charges. It found Mr. Hanson guilty of harassment. Mr. Hanson appealed.

ANALYSIS
¶ 9 The issue is whether sufficient evidence supports a guilty verdict for harassment.
¶ 10 Challenges to evidence sufficiency admit the truth of the State's evidence and all reasonable inferences. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). The issue is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
¶ 11 Mr. Hanson was charged with felony harassment.[3] To convict on that crime, the State had to prove beyond a reasonable doubt: (1) that Mr. Hanson knowingly threatened to cause bodily harm to Ms. Hanson and (2) that his words or conduct placed Ms. Hanson in reasonable fear that he would carry out this threat. RCW 9A.46.020(1)(a)(i), (1)(b); State v. Alvarez, 128 Wash.2d 1, 10, 904 P.2d 754 (1995).
¶ 12 In Ms. Hanson's initial statement to police, she reported that in the course of an argument, Mr. Hanson grabbed her arm and forced her to sit on the bed, bruised her arm, spit on her, poured soda on her, threatened her not to call the police, would not allow her to leave, and punched her in the head. She reluctantly testified that her statement to the police was an accurate account of what happened. She stated Mr. Hanson "marched back and forth in the room yelling" at her and "probably" did not allow her to leave the bedroom. RP at 33. She testified that the "incident was threatening." RP at 49.
¶ 13 At trial, Ms. Hanson, was an uncooperative witness, and attempted to recant her initial statement, testifying she was never fearful of any physical violence from Mr. Hanson. She related she merely made the police report because Mr. Hanson had asked her for money, and she did not have it. She wanted Mr. Hanson in jail so that he would not be angry and leave her. She wanted to save her marriage. Even so, her exculpatory testimony did not fully explain or merely contradicted her earlier report and visible bruising. The jury was left to decide the credibility and weight of all the evidence. The jury apparently accepted the State's evidence. We do not second guess the jury when substantial evidence supports guilt. State v. Camarillo, 115 Wash.2d 60, 71, 794 P.2d 850 (1990) (fact finder makes credibility determinations, not appellate court).
¶ 14 Here, substantial evidence supports the guilty finding. Officer Mann took Ms. Hanson's report of a physically damaging, harassing confrontation just 11 days after the incident, as compared to the contradicting statements Ms. Hanson gave at trial. Officer Mann testified Ms. Hanson was tearful and *180 frightened. Ms. Hanson reported, "if [Mr. Hanson] catches me here he's going to kill me." RP at 69. Officer Mann saw bruises on Ms. Hanson's neck, chest and lower left leg, as well as a lump on the back of her head. The photographic exhibits showed the bruising. The record shows for one and one half hours, Ms. Hanson was forced to endure spitting, pinching, punching, degrading, and threatening behavior from Mr. Hanson. While Ms. Hanson later minimized the event at trial and attempted to recant, the jury was entitled to accept the State's evidence. Camarillo, 115 Wash.2d at 71, 794 P.2d 850.
¶ 15 Moreover, recantations are not rare in criminal trials and are inherently questionable. See State v. Macon, 128 Wash.2d 784, 801, 911 P.2d 1004 (1996); State v. Young, 62 Wash.App. 895, 900, 802 P.2d 829 (1991). Here, the jury could compare Ms. Hanson's original statement with her testimony at trial and observe her demeanor. The jury's choice to believe Ms. Hanson's original statement over any conflicting testimony at trial is purely a credibility issue. We defer to the jury. Camarillo, 115 Wash.2d at 71, 794 P.2d 850; Macon, 128 Wash.2d at 804, 911 P.2d 1004.
¶ 16 In sum, sufficient evidence supports the jury's determination that Mr. Hanson committed felony harassment.
¶ 17 Affirmed.
I CONCUR: KATO, C.J.
SCHULTHEIS, J. (dissenting).
¶ 18 The crime of felony harassment requires proof of a direct or indirect communication of the intent to cause bodily injury that placed the victim in reasonable fear the threat would be carried out. RCW 9A.46.020(1)(a)(i), (b); RCW 9A.04.110(25)(a). A "threat" is an essential element. The substance of the threat alleged to have been communicated is essential to determine if it is a "true threat" and to assess the reasonableness of the victim's fear. Here, because there is no evidence of a communicated threat, the reasonableness of the victim's fear cannot be gauged. Accordingly, I would reverse.
¶ 19 At the outset, as the majority opinion notes, Jill Hanson was a recalcitrant witness at trial. Mrs. Hanson reconciled with her husband, Christopher Hanson, and wanted nothing to do with his prosecution. But that fact has no bearing on the issues before this court. See State v. Gentry, 125 Wash.2d 570, 680, 888 P.2d 1105 (1995) (Johnson, J., dissenting) (observing that a criminal prosecution is not a private right of action on behalf of the victim; rather, the prosecutor represents the citizens of the State to "deter, punish, restrain, and/or rehabilitate those whose actions are so dangerous or offensive that they are an affront to a civilized society"). Nor is it significant that Mrs. Hanson recanted her testimony at trial.
¶ 20 Threat. A "threat" as charged in this case is defined as a direct or indirect communication of the intent to cause bodily injury in the future to the person threatened or to any other person. RCW 9A.04.110(25)(a). Under these circumstances, "`[a] "true threat" is a statement made "in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted... as a serious expression of intention to inflict bodily harm upon or to take the life of [another individual]."'" State v. Williams, 144 Wash.2d 197, 207-08, 26 P.3d 890 (2001) (second alteration in original) (quoting State v. Knowles, 91 Wash.App. 367, 373, 957 P.2d 797 (1998)). "Idle talk, joking, or puffery does not [evince] a knowing communication of an actual intent to cause bodily injury." State v. J.M., 144 Wash.2d 472, 482, 28 P.3d 720 (2001). The threat must be real or serious. Id.
¶ 21 Here, there is no evidence of any such communication or expression attributed to Mr. Hanson, directly or indirectly. No witness accredits a single statement or a menacing gesture to Mr. Hanson from which a threat could be implied. The evidence does not even allow a legitimate inference that there was an identifiable true or serious threat. The fact that Mrs. Hanson alleged injuries and suffered other indignities at the hands of her husband is not relevant to the felony harassment charge. Mr. Hanson was appropriately charged with  and acquitted *181 of  crimes associated with those acts (assault and unlawful imprisonment).
¶ 22 When a threat is an element and the State fails to identify any evidence of a threat, the conviction must fail. State v. Weisberg, 65 Wash.App. 721, 725, 829 P.2d 252 (1992) (reversing conviction for rape in the second degree by forcible compulsion under RCW 9A.44.010(6) when the State failed to "identify any evidence of a threat of harm, either express or implied" and forcible compulsion alleged was a threat); see also State v. Johnson, 115 Wash.App. 890, 894, 64 P.3d 88 (2003) (noting that threats must be identified in order to determine whether the threats were motivated by gender bias to prove malicious harassment case under RCW 9A.36.080(1)).
¶ 23 At trial, Mrs. Hanson responded affirmatively to the State's questioning as to whether it was true that her husband "threatened you if you called the police." Report of Proceedings (Sept. 9, 2003)(RP) at 44; see also RP at 66. But there are no details about the threat in order to examine it under the criminal statute or cases interpreting it. Mrs. Hanson testified that she felt threatened during the incident and when her husband called for the $200.[1] But she does not provide any facts in order to determine whether a true threat was communicated to do her bodily harm. Mrs. Hanson's subjective belief applies to the second element  fear  but it does not help in determining whether there was, in fact, a threat in order to satisfy the first element.
¶ 24 In another reference to threats, the following exchange was held:
Q Did you tell the officer that your fear was that he threatened to take your 14-year-old daughter and she would never see you again? He threatened to kill you?
A No, I am saying something about my daughter, but Chris never said he was going to take her. Those 
Q You did not tell the officer that?
A Well, if I told her that then I told her something wrong.
RP at 62-63. From this testimony Mrs. Hanson denied that her husband threatened to kill her. The desk officer also testified that Mrs. Hanson told her that "if he catches me here he's going to kill me." RP at 69. That may well have been her perception. But the State failed to elicit any testimony that credits Mr. Hanson with any communication or expression of his desire or intent to do so in order to assess that perception.
¶ 25 Fear. The State must show that the person hearing the threat subjectively feared that the defendant would act on the threat and that, based on the words or conduct of the defendant, this fear was objectively reasonable. State v. Alvarez, 74 Wash.App. 250, 260, 872 P.2d 1123 (1994), aff'd, 128 Wash.2d 1, 904 P.2d 754 (1995). The purpose of this requirement is to "sift out idle threats from threats that warrant the mobilization of penal sanctions." Id. at 261, 872 P.2d 1123.
¶ 26 Mrs. Hanson's subjective fear was manifest in her conduct at the police station; she was trembling and tearful. However, her subjective fear is not attributed to a threat. The conviction cannot be based solely on the victim's subjective reaction. Weisberg, 65 Wash.App. at 725, 829 P.2d 252. The lack of an identifiable threat makes the objective fear component impossible to analyze. I cannot say that Mrs. Hanson's fear was objectively reasonable because the threat, if any, upon which her fear must be based is not known.
¶ 27 I would reverse.
NOTES
[1] Ms. Hanson denied having received any calls while she was meeting with the officer. The defense brought evidence from the cellular service provider to show that there were no incoming calls from Mr. Hanson to his wife's cellular phone at the time the officer took the report. The cellular phone records admitted into evidence logged Ms. Hanson's incoming calls. That exhibit is not part of this record. However, on this challenge to the sufficiency of the evidence, we accept the officer's testimony as true. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992).
[2] For instance, she complained that she was not "shoved" into the bedroom as the report relates; rather, her husband "forced" her there. Report of Proceedings (RP) at 47. She stated she was not repeatedly hit, punched, or kicked; she never saw a hand or fist. And she never used the word "berate" to describe her husband's verbal assault. RP at 48.
[3] Because Mr. Hanson had been previously convicted of harassing his wife, a felony was charged. RCW 9A.46.020(2)(b).
[1] This was the exchange:

"Q [Jill] had stated [Christopher] had been calling ever since reminding her of what would happen. Did you ever tell the officer that?
"A Well, it  Chris and I got together a couple times after the incident and there was no threatening behavior then.
"So  I don't know.
"Q There was [sic] threats in this behavior?
"A That incident was threatening and the two hundred dollar incident."
RP at 48-49.