
FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 AUG -5  AM 9: 58

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 69209-7-I |
| Respondent, | |
| v. | DIVISION ONE |
| DANIEL EDWARD LUSE, JR., | UNPUBLISHED OPINION |
| Appellant. | FILED: August 5, 2013 |

LEACH, C.J. — Daniel Luse challenges his conviction for felony harassment, arguing that the State presented insufficient evidence to support his conviction. Viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found Luse guilty as charged. We affirm.

## Background

In 2011, Patricia Neuroth met Daniel Luse. They became friends and began living together in Neuroth's house. Luse helped pay the rent. They lived together for six to eight months but separated after Luse assaulted Neuroth in February of 2012. While housed in the Snohomish County Jail, Luse began having suicidal thoughts and asked to speak to a psychologist. On March 11, 2012, psychologist Elizabeth Bellmer met with Luse. Luse told Bellmer, "I have thoughts in my head about suicide and harming myself after release." He further reported, "I've lost my girlfriend, and my heart is broken. I basically don't want to

live anymore without her." Luse explained to Bellmer that he had been in an eight-month relationship with his girl friend, living at her house and helping to make payments on the house. Luse then told Bellmer,

> I'm going to go out there with a gun. And I have a lot of ugliness in my head. I've had thoughts of taking her down with me. Bad thoughts. The devil is in my head and I can't get him out. I need closure on this situation to see if she lied to me. If she did, I'll go in the house and shoot him and wait until she gets home.

Bellmer contacted Deputy King and related her concerns. Although Bellmer considered Luse's statement a serious threat and was concerned for his ex-girlfriend's safety, Luse never identified the "girlfriend" or the "him" referenced in his statements. Also, Luse never said he was going to "kill" anyone.

Deputy King identified Neuroth as the likely girl friend that Luse mentioned. Because he could not reach her, he left a message asking her to contact Deputy Covington, who met with Neuroth and told her about Luse's statements. Covington did not recall whether he read or showed Bellmer's written statement to Neuroth or whether he simply gave Neuroth a paraphrased version. Neuroth "fell apart" when she heard about what Luse said in his conversation with Bellmer. She knew that Luse had access to weapons.

A jury convicted Luse of felony harassment. Luse appeals.

Analysis

Luse argues that the State presented insufficient evidence to show he made a true threat to kill Neuroth and that by his words or conduct he placed Neuroth in reasonable fear he would carry out the threat. In reviewing a

challenge to the sufficiency of the evidence, we view all facts and reasonable inferences in the light most favorable to the State to determine whether any rational trier of fact could find the elements of the crime beyond a reasonable doubt.[1] A challenge to the sufficiency of the evidence admits the truth of the State's evidence.[2]

Luse contends that the State failed to prove he threatened to kill Neuroth and failed to prove that Neuroth's fear resulted from anything he actually said. To convict Luse of felony harassment, the State must prove beyond a reasonable doubt (1) that Luse knowingly threatened to cause bodily harm to Neuroth and (2) that his words or conduct placed Neuroth in reasonable fear that he would carry out this threat.[3]

The first element required proving that Luse made a "true threat" to kill Neuroth.[4] The court instructed the jury:

> To be a true threat, a statement or act must occur in a context or under such circumstances where a reasonable person, in the position of the speaker, would foresee that the statement or act would be interpreted as a serious expression of intention to carry out the threat rather than as something said in jest or idle talk.[5]

---

[1] State v. Lord, 117 Wn.2d 829, 881, 822 P.2d 177 (1991).
[2] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).
[3] State v. Hanson, 126 Wn. App 276, 280, 108 P. 3d 177 (2005) (citing RCW 9A.46.020(1)(a)(i), (1)(b); State v. Alvarez, 128 Wn.2d 1, 10, 904 P. 2d 754 (1995)).
[4] State v. Schaler, 169 Wn.2d 274, 283-88, 236 P.3d 858 (2010).
[5] See State v. Phuong, ___Wn. App.___, 299 P.3d 37, 63 nn.38-39 (2013), petition for review filed, No. 88889-2 (Wash. May 31, 2013).

Luse argues that the record contains no evidence of a "true threat" to kill Neuroth. However, because Luse's conversation with Bellmer concerned his suicidal thoughts, a rational juror could reasonably infer that Luse's description of "thoughts" about taking someone "down" with him constitutes a "serious expression" of an intent to kill that person. Additionally, Luse made statements about "going out there with a gun" and waiting at his girl friend's house. Given the context of his statements, we conclude that a rational trier of fact could find that Luse made a "true threat."

Additionally, from the following evidence, a rational juror could reasonably decide that Luse's statements about his relationship with his girl friend indicate that he was referring to Neuroth. He indicated that he was in an eight-month relationship and helped to pay the rent on his girl friend's house. Neuroth said that she and Luse had been together for six or seven months, maybe a little longer, and that he helped to pay the rent.

Luse also challenges the sufficiency of the evidence to prove that his words or acts placed Neuroth in reasonable fear that he would kill her. He asserts that the evidence showed Neuroth became fearful not because of what he actually told Bellmer but because of Deputy Covington's description of what he said. Luse claims that Deputy Covington's interpretation of what he said did not reflect what he told Bellmer.

When the trial court denied Luse's motion to dismiss, it noted that it was unclear what the deputy told Neuroth but concluded that the State presented

enough evidence "from which a jury could reasonably conclude that there was a threat to kill Ms. Neuroth which placed her in fear." A rational trier of fact could have found that Luse's words placed Neuroth in reasonable fear that Luse would carry out his threat. Covington reviewed Bellmer's statement immediately before relating Luse's threat to Neuroth. Additionally, Bellmer quoted Luse's threat verbatim in her statement to the police. Although Neuroth did not recall the exact words that Covington used, she remembered that he told her Luse said "he was going to get a gun and he was going to kill me and anybody else that was with me." Even if Covington's interpretation of Luse's threat was exaggerated, a rational trier of fact could find that Luse's statements placed Neuroth in reasonable fear that he would carry out the threat because they suggested that Luse intended to commit suicide and "take down" Neuroth with him.

Luse has filed a statement of additional grounds, but his arguments lack clarity. He seems to question Officer Covington's credibility, perhaps alleging that Covington deliberately falsified his account about what Luse said. Luse also argues that if Covington had not relayed these allegedly false statements to Neuroth, the State would have lacked sufficient evidence to file charges against him. To the extent that Luse challenges Covington's veracity or credibility, the jury resolved those issues adversely to him. This court does not review credibility issues. Therefore, we do not address this claim.

## Conclusion

Because sufficient evidence supports Luse's conviction for felony harassment, we affirm.

_Leach, C.J._

WE CONCUR:

_Spearman, J._

_Lau, J._