# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76756-9-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| DAVID TYRONE HOSTON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: October 22, 2018 |
| | ) | |

MANN, A.C.J. — David Hoston was convicted of first degree rape, second degree assault, first degree burglary, and attempting to elude the police after breaking into his ex-wife's apartment and beating and raping her. Hoston argues for the first time on appeal that the trial court's failure to instruct the jury that consent negates forcible compulsion, an essential element of rape, is a reversible error. Hoston further argues that the trial court erred by failing to offer his proposed definition of forcible compulsion, and by entering separate convictions for rape and assault. We affirm.

I.

On January 31, 2016, Chawntee Duncan awoke to being choked and punched. She could not breathe and realized someone was hitting her face. Her assailant was wearing a mask and gloves. Eventually, Duncan recognized her assailant as her ex-

husband Hoston and asked him to stop. Hoston tore off Duncan's pants, attempted to penetrate her anally, and then penetrated her vaginally. Hoston then abruptly stopped the attack, removed his mask, and began to express remorse. Hoston stated he had entered the apartment through the patio sliding door. Hoston told Duncan that he would take her to the hospital. Duncan said she would make up a story.

When Hoston went into the kitchen to get water for Duncan, she texted her mother and friends for help. After Hoston returned he helped dress Duncan and left to get his car. When Hoston left the apartment, Duncan locked the doors and called 911.

Hoston was charged with burglary in the first degree, rape in the first degree, assault in the second degree, and attempting to elude a police offer. He was also charged with assault in the second degree for a previous incident involving Duncan. A jury convicted Hoston of rape in the first degree, assault in the second degree, burglary in the first degree, and eluding the police. Hoston was acquitted of the separate assault charge. Hoston was sentenced to an indeterminate sentence with a minimum term of 138 months for rape in the first degree to run concurrent with a 29-month sentence for assault in the second degree, a 54-month sentence for burglary, and a 6-month sentence for eluding. Hoston appeals.

## II.

Hoston argues for the first time on appeal that the trial court erred in failing to instruct the jury on the definition of consent and the State's burden of disproving consent beyond a reasonable doubt. We disagree.

A.

An appellate court may refuse to review any claim of error not raised in the trial court. State v. O'Hara, 167 Wn.2d 91, 97-98, 217 P.3d 756 (2009) (internal citation omitted). Appellate courts "will not sanction a party's failure to point out at trial an error which the trial court, if given the opportunity, might have been able to correct to avoid an appeal and a consequent new trial." O'Hara, 167 Wn.2d at 98. One exception to the general rule is a "manifest error affecting a constitutional right." RAP 2.5(a)(3).

In order to demonstrate a manifest error under RAP 2.5(a)(3), the appellant must demonstrate both (1) an error of constitutional magnitude and (2) the error is manifest. If the reviewing court determines that the appellant has claimed a manifest constitutional error the error is still subject to review for harmless error. O'Hara, 167 Wn.2d at 98.

The court first determines whether the alleged error raises a constitutional interest. "We look to the asserted claim and assess whether, if correct, it implicates a constitutional interest as compared to another form of trial error." O'Hara, 167 Wn.2d at 98. If the court determines the alleged error raises a constitutional interest, it looks next to whether the error is manifest. "'Manifest' in RAP 2.5(a)(3) requires a showing of actual prejudice." State v. Kirkman, 159 Wn.2d 918, 935, 155 P.3d 125 (2007). "To demonstrate actual prejudice, there must be a 'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.'" O'Hara, 167 Wn.2d at 99 (quoting Kirkman, 159 Wn.2d at 935).

The actual prejudice analysis to determine a manifest error is separate from a harmless error analysis. A harmless error analysis occurs after the reviewing court

-3-

determines that there was a manifest constitutional error. O'Hara, 167 Wn.2d at 99.

The focus of the actual prejudice analysis is whether the error is obvious on the

record. O'Hara, 167 Wn.2d at 99-100.

> It is not the role of an appellate court on direct appeal to address claims where the trial court could not have foreseen the potential error or where the prosecutor or trial counsel could have been justified in their actions or failure to object. Thus, to determine whether an error is practical and identifiable, the appellate court must place itself in the shoes of the trial court to ascertain whether, given what the trial court knew at that time, the court could have corrected the error.

O'Hara, 167 Wn.2d at 100.

## B.

Hoston argues that the trial court erred in failing to instruct the jury that consent

negates forcible compulsion and that it was the prosecutor's burden of disproving

consent beyond a reasonable doubt. Jury instructional errors that shift the burden of

proof are considered constitutional error. See State v. McCullum, 98 Wn.2d 484, 488,

656 P.2d 1064 (1983); O'Hara, 167 Wn.2d at 100.

However, even if the alleged error is constitutional, Hoston fails to demonstrate

that the error is manifest. Hoston first fails to demonstrate actual prejudice because the

trial court properly instructed the jury on elements of rape in the first degree, including

forcible compulsion, and that the State had the burden to prove all of the elements.

Using pattern instruction WPIC 40.02,[1] jury instruction 19 provided:

> To convict the defendant of the crime of rape in the first degree, as charged in Count 2, each of the following four elements of the crime must be proved beyond a reasonable doubt:

---

[1] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 40.02 (4th ed. 2016) (WPIC).

(1) That on or about January 31, 2016, the defendant engaged in sexual intercourse with Chawntee Duncan;

(2) That the sexual intercourse was by forcible compulsion;

(3) That the defendant feloniously entered into the building where Chawntee Duncan was situated; and

(4) That any of these acts occurred in the State of Washington.

If you find from the evidence that elements (1), (2), (3), and (4) have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty as to Count 2.

On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of elements (1), (2), (3), or (4), then it will be your duty to return a verdict of not guilty as to Count 2.

Relying on State v. W.R., 181 Wn.2d 757, 336 P.3d 1134 (2014), Hoston argues that the trial court's failure to explicitly instruct the jury that consent negates forcible compulsion was reversible error. In W.R., our Supreme Court held that "consent . . . negates the element of forcible compulsion [and t]herefore, once a defendant asserts a consent defense and provides sufficient evidence to support the defense, the State bears the burden of proving lack of consent as part of its proof of the element of forcible compulsion." 181 Wn.2d at 763. The Supreme Court's focus, however, was where the trial court's instructions placed the burden of proof. It violates a defendant's due process rights for the trial court to force the defendant to disprove an essential element of the crime charged. But as the Court explained "[b]ecause the focus is on forcible compulsion, jury instructions need only require the State to prove the elements of the crime. It is not necessary to add a new instruction on consent simply because evidence of consent is produced." W.R., 181 Wn.2d at 767 n.3.

Therefore, the real question is not whether the trial court instructed the jury that consent negates forcible compulsion but instead whether the burden of proof was improperly placed upon the defendant. Here, the trial court's written and oral instructions placed the burden of proof squarely upon the State.

Hoston also relies on State v. Ortiz-Triana, 193 Wn. App. 769, 373 P.3d 335 (2016), and argues that it is closely analogous to the case at hand. In Ortiz-Triana, this court reversed the appellant's conviction for rape in the second degree based on an improper jury instruction. 193 Wn. App. at 771. But the jury instructions at issue in Ortiz-Triana expressly placed the burden of proof on the defendant. The trial court instructed the jury that "[t]he defendant has the burden of proving [consent] by a preponderance of the evidence." Ortiz-Triana, 193 Wn. App. at 774. Further, on appeal, the State expressly conceded that this instruction was an error and violated the defendant's due process rights. Ortiz-Triana, 193 Wn. App. at 776. Here, unlike Ortiz-Triana, the jury was not instructed that Hoston carried the burden to prove consent. The jury was instructed that "[t]he State is the plaintiff and has the burden of proving each element of each crime beyond a reasonable doubt. The defendant has no burden of proving that a reasonable doubt exists as to these elements."

Moreover, in determining whether the error is practical and identifiable, and thus manifest, we must place ourselves "in the shoes of the trial court to ascertain whether, given what the trial court knew at that time, the court could have corrected the error." O'Hara, 167 Wn.2d at 100. Here, the pattern jury instructions expressly support the trial court's instructions. The comments to the pattern instruction for first degree rape, discuss "consent" and provide: "Although consent negates the element of forcible compulsion, no separate instruction on consent is needed." WPIC 40.02 cmt (citing W.R., 181 Wn.2d at 767, n.3). Further, comments to the pattern instruction defining consent provide: "Under no circumstances should this instruction be given unless

-6-

requested, or expressly agreed to, by the defense." WPIC 40.02 cmt (citing State v. Lynch, 178 Wn.2d 487, 309 P.3d 482 (2013)).

Because the trial court properly instructed the jury on the correct burden of proof, there was nothing before the court that would have caused it to believe an error needed to be corrected. Further, because the burden of proof was placed solely upon the prosecution, and therefore the asserted error does not have any practical and identifiable consequences, the alleged error is not manifest and Hoston cannot raise it for the first time on appeal.

### III.

Hoston next contends that the trial court committed reversible error by refusing to instruct the jury on his proposed definition of "forcible compulsion." Based on State v. Weisberg, 65 Wn. App. 721, 725, 829 P.2d 252 (1992), Hoston proposed an instruction that expanded the statutory definition of forcible compulsion by adding "[t]he alleged victim must perceive a threat, and the defendant must communicate an intent to inflict physical injury in order to coerce compliance."

"Due process requires that jury instructions (1) allow the parties to argue all theories of their respective cases supported by sufficient evidence, (2) fully instruct the jury on the defense theory, (3) inform the jury of the applicable law, and (4) give the jury discretion to decide questions of fact." State v. Koch, 157 Wn. App. 20, 33, 237 P.3d 287 (2010). "A defendant is entitled to have his theory of the case submitted to the jury . . . when the theory is supported by substantial evidence in the record." State v. Griffith, 91 Wn.2d 572, 574, 589 P.2d 799 (1979). But a "trial court is not required to

give an instruction which is erroneous in any respect." State v. Hoffman, 116 Wn.2d 51, 110-11, 804 P.2d 577 (1991).

To be convicted of rape in the first degree, the State was required to prove that Hoston "engag[ed] in sexual intercourse with another person by forcible compulsion." RCW 9A.44.040(1). The jury instructions defined forcible compulsion using the statutory definition: "[f]orcible compulsion means physical force which overcomes resistance, or a threat, express or implied, that places a person in fear of death or physical injury." Jury instruction 22; RCW 9A.44.010(6). The plain language of RCW 9A.44.010(6) indicates that forcible compulsion can be found in two different situations: (1) physical force which overcomes resistance or (2) an express or implied threat. The word "or" in between the physical force and threat portions of RCW 9A.44.010(6) creates a disjunction and indicates that the legislature intended for the two phrases to act as separate situations.[2]

In Weisberg, the case relied upon by Hoston, the 54-year-old defendant was neighbors with the victim, a 39-year-old, developmentally disabled woman. 65 Wn. App. at 723. The defendant invited the victim over to his house to try on clothes. Weisberg, 65 Wn. App. at 723. The defendant helped the victim undress, asked her to lie on his bed, and had intercourse with her. Weisberg, 65 Wn. App. at 723-24. The victim testified that she did not try to stop the defendant because she was afraid that he

---

[2] For an example of a threat-based case see, e.g., State v. Perez, No. 69005-1-I, slip op. at 42 (Wash. Ct. App. July 14, 2014) (unpublished), http://www.courts.wa.gov/opinions/pdf/690051.pdf (The defendant and another party threatened to kill the victim if she did not have sex with them. The victim "testified that she thought [the defendant] would kill her if she did not have sex with them and that she had seen them both with guns."). For an example of a physical force case, see State v. Quasim, noted at 168 Wn. App. 1034, 2012 WL 2086961, at *1, *3 (The court held that there was sufficient evidence of forcible compulsion because the victim "was badly injured in a physical confrontation the night of the rape [and] [t]here was ample evidence . . . that [the victim] suffered significant injuries to her head, face, and vaginal area.").

would hurt her. Weisberg, 65 Wn. App. at 724. At no point did the defendant use physical force or expressly threaten the victim. Instead, the State argued only that the defendant "through his conduct and the circumstances, impliedly threatened [the victim] such that she feared physical injury if she did not comply with his demands." Weisberg, 65 Wn. App. at 725. On appeal, the court held that "there must be some evidence from which the jury could infer that not only did [the victim] perceive a threat, but also that [the defendant] in some way communicated his intention to inflict physical injury in order to coerce compliance." Weisberg, 65 Wn. App. at 726.

Here, unlike in Weisberg, Hoston exerted physical force on the victim. The jury did not have to find that the victim perceived a threat or that Hoston communicated an intent to inflict physical injury, as Hoston's proposed instruction would have required, because Hoston inflicted physical injury. The jury simply had to find that Hoston exerted physical force which overcame resistance, as the trial court instructed. Therefore, Hoston's proposed instruction misstated the law as applicable to this case and, if accepted, would have risked confusing the jury.

The trial judge did not err in refusing to instruct the jury according to Hoston's proposed instruction.

## IV.

Finally, Hoston argues that his convictions for rape in the first degree and assault in the second degree constitute double jeopardy because they constituted a single course of conduct. We disagree.

Both the state and federal constitutions prohibit a court from enforcing multiple punishments against the same individual for the same offense. U.S. Const. amend. V;

Washington Const. art. I, § 9; State v. Calle, 125 Wn.2d 769, 772, 888 P.2d 155 (1995). We review alleged double jeopardy and merger violations de novo. State v. Freeman, 153 Wn.2d 765, 770, 108 P.3d 753 (2005).

When reviewing an alleged double jeopardy violation, the reviewing court first considers "any express or implicit legislative intent." Freeman, 153 Wn.2d at 772. "[W]hen the degree of one offense is raised by conduct separately criminalized by the legislature, we presume the legislature intended to punish both offenses through a greater sentence for the greater crime." Freeman, 153 Wn.2d at 772.

Under the "same evidence" rule, a defendant's double jeopardy rights are violated "if he or she is convicted of offenses that are identical in both fact and law." Calle, 125 Wn.2d at 777. However, "if each offense, as charged, included elements not included in the other, the offenses are different and multiple convictions can stand. Calle, 125 Wn.2d at 777. Washington's same evidence test is similar to that approved in Blockburger v. United States, 284 U.S. 299, 304, 52 S. Ct. 180, 75 L. Ed 306 (1932):

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

Here, assault in the second degree and rape in the first degree are not the same in law as they each contain elements not required in the other. To convict Hoston of rape in the first degree, the State had to prove that the Hoston had sexual intercourse with Duncan; the sexual intercourse was by forcible compulsion; that Hoston feloniously entered the building where Duncan was; and that the act occurred in the state of Washington. To convict Hoston of assault in the second degree, the State had to prove that Hoston intentionally assaulted Duncan by strangulation; and the act occurred in the

state of Washington. The rape charge required proof of felonious entry into the building which was not required for assault. The assault charge required proof of strangulation, which was not required for rape. The two crimes were not the same in law.

The two crimes were also not the same in fact. The rape charge was supported by the facts that Hoston broke into Duncan's apartment and forcibly raped her by tearing off her pants and having sexual intercourse with her. The assault charge was supported by facts that Hoston strangled Duncan. Even if some of the facts overlapped, evidence was presented supporting each crime. Under the facts of this case, rape in the first degree and assault in the second degree are neither the same in fact nor in law. The trial court did not violate Hoston's right to be free from double jeopardy.

Hoston also contends that his convictions for rape in the first degree and assault in the second degree should have merged at sentencing. Hoston relies on State v. Johnson, 92 Wn.2d 671, 680, 600 P.2d 1249 (1979). In Johnson, the Supreme Court "adopted a merger rule prohibiting separate conviction and punishment for criminal offenses used to enhance another crime." State v. Collicott, 118 Wn.2d 649, 657, 827 P.2d 263 (1992). In Johnson, the defendant picked up two hitchhiking women, took them back to his house, and raped them at knife point. Johnson, 92 Wn.2d at 672. At trial, the defendant was found guilty of first degree rape, first degree kidnapping, and first degree assault. Our Supreme Court reversed the convictions as contrary to the double jeopardy and merger doctrines. The court held that because both the assault and kidnapping charges were necessary elements of first degree rape, "an additional conviction cannot be allowed to stand unless it involves some injury to the person or

property of the victim or others, which is separate and distinct from and not merely incidental to the crime of which it forms an element." Johnson, 92 Wn.2d at 680.

RCW 9.79.170(1) provides:

A person is guilty of rape in the first degree when such person engages in sexual intercourse with another person not married to the perpetrator by forcible compulsion where the perpetrator or an accessory:

    (a) Uses or threatens to use a deadly weapon; or
    (b) Kidnaps the victim; or
    (c) Conflicts serious physical injury; or
    (d) Feloniously enters into the building or vehicle where the victim is situated.

Former RCW 9.79.170(1) (1975); RCW 9A.44.040. In Johnson, the defendant's convictions were required to merge because his actions in kidnapping and assaulting the victims were necessary elements of his conviction of rape in the first degree. If the defendant had not kidnapped or assaulted the victims, he could not have been found guilty of first degree rape.

Here, however, Hoston's assault conviction was not a necessary element of his conviction of first degree rape because Hoston was charged with rape while feloniously entering the building where the victim was situated. The jury was instructed that that "[a] person commits the crime of rape in the first degree when he or she engages in sexual intercourse with another person by forcible compulsion when he or she feloniously enters into the building or vehicle where the other person is situated." WPIC 40.01; RCW 9A.44.040. Accordingly, the fact that Hoston also assaulted the victim did not elevate his charge from a lower degree of rape to rape in the first degree. As such, Hoston's assault and rape convictions were not required to be merged at sentencing.

-12-

No. 76756-9-I/13

We affirm.

_____ Mann, A.C.J.

WE CONCUR:

_____          _____
                                  Leach, J.