FILED
8/1/2022
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) ) ) | No. 82608-5-I |
| HECTOR PABLO RIVERA-DIAZ, | ) ) | UNPUBLISHED OPINION |
| Petitioner. | ) ) | |

ANDRUS, C.J. — In this personal restraint petition (PRP), Hector Pablo Rivera-Diaz challenges the sufficiency of the evidence supporting his conviction for second-degree rape, claims he is actually innocent, argues that the prosecutor acted vindictively in adding the rape charge because he rejected the State's plea offer, and contends cumulative error prevented him from having a fair trial. We reject each argument and deny Rivera-Diaz's petition.

FACTS

A.G., a mother of three children, shared a two bedroom Normandy Park apartment with her boyfriend, Rivera-Diaz, the father of A.G.'s two youngest children. They rented out the second bedroom to a woman and her two children, leaving A.G., Rivera-Diaz, and A.G.'s three little girls to sleep together in the same bedroom.

A.G. testified that, over the course of several years, Rivera-Diaz began accusing her of going out with other men and verbally abusing her by calling her

Citations and pin cites are based on the Westlaw online version of the cited material.

"useless" and "a prostitute." While the couple lived in Kansas, Rivera-Diaz hit her in the eye, causing it to fill with blood, requiring treatment at a hospital. She also stated that Rivera-Diaz "would always force" her to have anal sex, despite her never agreeing to do so. When asked what she meant by "force," she testified that he would force her "with his words, he would obligate me, he would force me, he'd throw me down. However he wanted." When she told Rivera-Diaz she did not want to have anal sex, he threatened to harm her and "even told [her] that he would have spells cast on [her]." The anal sex caused her "[a] lot of pain," and made it difficult to go to the bathroom. She repeatedly told him that anal sex was not acceptable to her because "God made a woman to do things properly, not disorderly."

On another occasion, Rivera-Diaz grabbed her and hit her with a shoe on her buttock, causing a large bruise. She decided to report Rivera-Diaz to the police and obtained a no-contact order against him from the Des Moines Municipal Court. She returned, however, to live with Rivera-Diaz, because he told her that if she left him, he would kill her.

Shortly before the incident that led to the current charges, Rivera-Diaz came home to find A.G. inside the apartment not wearing a bra. This apparently angered him and he attempted to stab her with a knife.

On October 2, 2018, A.G. awoke in the early morning hours when Rivera-Diaz "grabbed" her, and started anally raping her. A.G. testified that "he forced me, I had to have sex with him." She explained, "I didn't want to," but "[o]ut of fear, I had to do it so that he wouldn't hit me." A.G. testified that "[h]e just grabbed me."

A.G. told Rivera-Diaz she did not want to have sex, but he continued for about 15 minutes.

The children were present in the bedroom during the rape. A.G.'s youngest daughter, 3, was asleep in the same bed where the anal rape occurred. A.G.'s 9-year-old daughter later testified that she remembered the bed banging, her mother crying, sounds as though adults were hitting each other, and Rivera-Diaz saying "mad" words. A.G. saw her daughter's eyes open during the rape.

When A.G. got up to make breakfast, Rivera-Diaz saw her crying and accused her of having another lover. He grabbed her by the throat, restricting her breathing, and squeezed for several minutes. Rivera-Diaz also punched A.G.'s arm and left a bruise. Rivera-Diaz then departed for work.

A.G. took her daughters to school and asked to speak to Jacqueline Alvarez, a translator at her daughter's school, in private. A.G. testified that she went to the school instead of directly to the police station because she knew the school had a translator who could help her, and she believed the police station did not. A.G., while crying, described what had happened. Alvarez told a school counselor, who called the police. Alvarez confirmed that A.G. told her and representatives of a women's shelter that she had been sexually abused that morning.

Alvarez accompanied A.G. to the Normandy Park police station. Officer Lievero, who interviewed A.G., testified that she was very upset and fearful. A.G. teared up as she recounted her ordeal, using Alvarez as translator. Officer Lievero took a picture of the bruise on A.G.'s arm. Officer Lievero accompanied A.G. to

the apartment for her to collect clothing and her children's birth certificates and social security papers. The papers, however, were missing. A.G then saw Rivera-Diaz in his car outside the apartment. When the police officer saw him and ran after him, Rivera-Diaz fled the parking lot via car. After Rivera-Diaz was arrested, A.G. found her daughters' birth certificates and social security papers inside the vehicle.

The State initially charged Rivera-Diaz with felony violation of a court order in October 2018. The State amended the charges to second-degree rape domestic violence, second-degree assault domestic violence, and felony violation of a court order, in January 2019.

On April 9, 2019, a jury convicted Rivera-Diaz as charged, finding by special verdict that the rape was an aggravated domestic violence offense. This court affirmed Rivera-Diaz's convictions on direct appeal. *State v. Rivera-Diaz*, No. 79932-1-I, slip op. at 1 (Wash. Ct. App. July 20, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/799321.pdf.

On January 4, 2021, Rivera-Diaz filed a timely CrR 7.8 motion, which the trial court transferred to this court to address as a personal restraint petition. This court dismissed as frivolous some of Rivera-Diaz's claims but referred others for this panel to address.

## ANALYSIS

We consider arguments raised in a personal restraint petition under one of two standards, depending on whether the error alleged is constitutional or non-constitutional. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671-72, 101 P.3d 1

(2004). To receive relief following a non-constitutional error, the petitioner must show a fundamental defect resulting in a complete miscarriage of justice. *In re Pers. Restraint of Elmore*, 162 Wn.2d 236, 251, 172 P.3d 335 (2007). A petitioner raising constitutional error must show that the error caused actual and substantial prejudice. *Id.* We determine actual prejudice in light of the totality of the circumstances. *In re Pers. Restraint of Brockie*, 178 Wn.2d 532, 539, 309 P.3d 498 (2013).

<u>Sufficiency of the Evidence</u>

Rivera-Diaz first contends the State failed to present sufficient evidence to prove that he raped A.G. by "forcible compulsion," an essential element of second-degree rape. We disagree.

When reviewing a sufficiency challenge, we assess the facts in the light most favorable to the State. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We will reverse a conviction for insufficient evidence only if no rational trier of fact could have found guilt beyond a reasonable doubt. *Id*. We defer to the trier of fact on issues of witness credibility and persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

We conclude there was ample evidence to convince a rational jury that Rivera-Diaz engaged in sexual intercourse by forcible compulsion. "A person is guilty of rape in the second degree when. . .the person engages in sexual intercourse with another person [b]y forcible compulsion[.]" RCW 9A.44.050(1)(a). "Forcible compulsion" means "physical force which overcomes resistance, or a threat, express or implied, that places a person in fear of death or physical injury

to herself or himself or another person, or in fear that she or he or another person will be kidnapped." RCW 9A.44.010(3). "Threat" means "[t]o cause bodily injury in the future to the person threatened or to any other person." RCW 9A.04.110(28)(a). To prove "forcible compulsion" via a "threat," the State must prove the defendant communicated an intention to cause bodily injury. *State v. Weisberg*, 65 Wn. App. 721, 725, 829 P.2d 252 (1992). "There can be no forcible compulsion when the victim consents, as there is no resistance to overcome." *State v. W.R., Jr.*, 181 Wn.2d 757, 765, 336 P.3d 1134 (2014). But whether a victim resisted is a fact-sensitive inquiry, requiring an examination of the totality of the circumstances, including the victim's words and conduct. *State v. McKnight*, 54 Wn. App. 521, 526, 774 P.2d 532 (1989). The resistance need not be physical, but the State bears the burden to prove "the act of intercourse was accomplished by the use of force." *Id*. at 525, 528.

Rivera-Diaz argues that A.G.'s testimony did not establish that he used force or a threat of force because she merely made unspecific references to his use of force in the past, rather than a specific threat of force on the day of the rape. This argument mischaracterizes A.G.'s testimony. She testified that Rivera-Diaz woke up, grabbed her, and started anally raping her without her consent. A.G. unequivocally testified that "he forced me. I had to have sex with him" and she did not want to do so. She stated she told Rivera-Diaz she did not want to have sex but he continued raping her. She further explained that she did not physically resist because "[o]ut of fear, I had to do it so that he wouldn't hit me."

A.G.'s fear of being physically assaulted was well-founded. Rivera-Diaz had struck her in the eye and beaten her with a work shoe in the past, and she sustained injuries both times. And, on the morning of the rape while she was cooking his breakfast, Rivera-Diaz assaulted her further, grabbing her by the throat and squeezing until she feared for her life.

The testimony of a victim in a sex-offense case need not be corroborated in order to convict the accused. RCW 9A.44.020(1). Here, however, A.G.'s 9-year-old daughter provided corroborating testimony about Rivera-Diaz's past physical abuse of A.G., as well as the rape and assault that morning, describing how she saw her mother crying and heard the bed banging, the sounds of hitting, and Rivera-Diaz saying "mad" words to her mother. Alvarez testified that when A.G. arrived with her girls at the school that morning, she was "sobbing," and she explained how she had been abused. Alvarez described A.G. as "very nervous," "very scared," and "very emotional." The police officer who interviewed A.G. that morning also described her demeanor as "fearful" as he took a picture of the bruise on A.G.'s arm.

Viewing the evidence in the light most favorable to the State, there was sufficient evidence from which a rational jury could find that Rivera-Diaz forced A.G. to have sex against her will. There was sufficient evidence to convict Rivera-Diaz of second-degree rape.

<u>Actual Innocence</u>

Rivera-Diaz next argues that he should be released from confinement because he is "actually innocent." There are two forms of an actual innocence

claim.  *In re Pers. Restraint of Weber*, 175 Wn.2d 247, 256, 284 P.3d 734 (2012).

The first are "freestanding constitutional claims of actual innocence in which

innocence itself provides a basis for relief."  *Id.*  The second are "so-called

'gateway' claims used to avoid procedural time bars."  *Id.*  In this case, Rivera-Diaz

asks this court to recognize the existence of a constitutional, freestanding actual

innocence claim.

In *Weber*, our Supreme Court refused the invitation to adopt any such claim

in the absence of evidence sufficient to satisfy the "extraordinarily high" burden of

demonstrating a gateway actual innocence claim.  *Weber*, 175 Wn.2d at 262-63.

"To be credible, a gateway actual innocence claim requires the petitioner to

support his allegations with new, reliable evidence."  *Id.* at 258.  A.G. has not

recanted her testimony.  Rivera-Diaz presents no evidence that he was not

physically present in the apartment the morning of the rape.  He has no eyewitness

testimony to establish that A.G.'s testimony was false.  While Rivera-Diaz told the

trial court that he was innocent, this statement, without more, is not new or reliable

evidence.  Rivera-Diaz has not met the standard for demonstrating actual

innocence.

### Prosecutorial Vindictiveness

Rivera-Diaz next argues that he was subjected to prosecutorial

vindictiveness after rejecting a plea deal.  The record does not support this claim.

"Constitutional due process principles prohibit prosecutorial vindictiveness."

*State v. Korum*, 157 Wn.2d 614, 627, 141 P.3d 13 (2006); *Bordenkircher v. Hayes*,

434 U.S. 357, 363, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978); U.S. Const. amend.

XIV; Const. art. I, § 3. "Prosecutorial vindictiveness is the intentional filing of a more serious crime in retaliation for a defendant's lawful exercise of a procedural right." *State v. Bonisisio,* 92 Wn. App. 783, 790, 964 P.2d 1222 (1998). "'[A] prosecutorial action is 'vindictive' only if [it is] designed to penalize a defendant for invoking legally protected rights.'" *Korum*, 157 Wn.2d at 627 (quoting *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987)).

Rivera-Diaz has not demonstrated that the State added charges against him to retaliate against him for exercising his right to a jury trial. The State charged Rivera-Diaz with felony violation of a court order in October 2018 but moved to amend the information shortly thereafter, adding the second-degree rape and second-degree assault charges in January 2019.

At a pre-trial hearing on March 25, 2019, Rivera-Diaz's counsel reported that Rivera-Diaz "turned down an assault in the fourth degree with credit for time served, with the information that the State may amend these charges" and that Rivera-Diaz had not changed his mind regarding the plea deal. The trial court offered to give Rivera-Diaz more time to talk with his lawyer, adding that "[t]he State has made an offer to you that sounds quite generous, but it's ultimately up to you to decide. . .whether you wish to go forward to trial or whether you wish to take advantage of a plea offer." Rivera-Diaz reiterated he would not accept the State's offer. The trial court advised him that as soon as trial began, the offer would be "off the table." Rivera-Diaz confirmed, repeatedly, that he wished to go to trial.

Simply making a "generous" offer and then withdrawing the offer once trial proceeds does not constitute vindictiveness. "That a prosecutor may offer 'hardball' choices to a defendant does not make the process constitutionally unfair, so long as the choices are realistically based upon evidence and options known to both sides." *State v. Lee*, 69 Wn. App. 31, 36, 847 P.2d 25 (1993).

In *State v. Korum*, the defendant "made a conscious decision to withdraw his plea and pursue his chances at trial. . .with the knowledge that the State intended to file additional charges if it failed to resolve the case through a plea agreement and that he ran the risk of being convicted on all of the charges." 157 Wn.2d at 636. "When that proved true for 30 of the 32 charges, Korum raised a claim of prosecutorial vindictiveness at his sentencing hearing." *Id.* "A claim of vindictive prosecution cannot insulate the defendant from the lawful consequences of his tactical choices." *Id.* (internal quotations omitted).

Here, the State offered Rivera-Diaz a plea deal both before and after the State had charged him with second-degree rape and second-degree assault. He was aware of the risks he faced by rejecting the plea offer and choosing to proceed to trial. Rivera-Diaz has not demonstrated prosecutorial vindictiveness.

<u>Cumulative Error</u>

Finally, Rivera-Diaz argues that cumulative error warrants a reversal of his convictions. Under the cumulative error doctrine, we may reverse a conviction where the combined effect of errors during trial effectively denied the defendant the right to a fair trial even if each error standing alone would be harmless. *State v. Venegas*, 155 Wn. App. 507, 520, 228 P.3d 813 (2010); *State v. Emery*, 174

Wn.2d 741, 766, 278 P.3d 653 (2012).  Rivera-Diaz has not shown any error at trial, much less multiple cumulative errors.

We therefore deny this petition.


WE CONCUR:

_Andrus, C.J._

_Mann, J._

_Coburn, J._